Argued October 9, affirmed December 7, petition for rehearing
denied December 19, 1972

MILLS, *Appellant, v.* DUNN BROS., INC.,
*Respondent.*

503 P2d 1250

*George M. Joseph,* Portland, argued the cause for appellant. With him on the brief were Carlton R. Reiter; Reiter, Day, Wall & Bricker; and Bemis, Breathouwer & Joseph, Portland.

*Ridgway K. Foley, Jr.,* Portland, argued the cause for respondent. With him on the brief were Gordon Moore; and Souther, Spaulding, Kinsey, Williamson & Schwabe, Portland.

Before O'CONNELL, Chief Justice, and McALLISTER, DENECKE, HOLMAN, HOWELL, and BRYSON, Justices.

HOLMAN, J.

This action presents an unusual situation. A fireman of a railroad locomotive seeks damages from the owner of a truck for personal injuries received in an intersection collision between the locomotive and

the truck. Plaintiff appeals from a judgment entered on a jury verdict for defendant.

■ Plaintiff contends the trial court should have instructed the jury that defendant's driver was negligent and that such negligence was a cause of the accident. No claim of contributory negligence is made by defendant against plaintiff. As a result of plaintiff's contention, it is necessary to recapitulate the evidence, remembering that, because of defendant's verdict, the evidence must be interpreted in a manner most favorable to defendant.

Defendant's driver was operating a large truck loaded with natural gas transmission pipe. The loaded truck was approximately 70 feet in length. At the time of the accident, it had just left the El Paso Pipe Yard, which is situated on Mather Road in Clackamas County, a short distance east of where Mather Road crosses the Southern Pacific Railroad tracks. Mather Road runs approximately east and west and crosses the tracks at a right angle. There are four tracks. From the east, the direction from which defendant's truck was coming, there are a spur track, a drill track, a siding or passing track, and the main line. On the east side of the tracks there is a cross buck with a stop sign on it. The cross buck and stop sign are 54 feet from the east rail of the main line, the other three tracks lying between those two points.

At the time of the accident, the spur and drill tracks were unoccupied, but the passing track was occupied south of the intersection with Mather Road by a southbound freight train called the Canby Local, which was awaiting the arrival of a northbound freight train from Eugene on the main line. The rear of the caboose of the Canby Local was 226 feet south of the

intersection. From the stop sign on the east side of the tracks, the view of the main line to the south past a point approximately 300 feet from the intersection was blocked out by the Canby Local.

Defendant's driver, traveling west, stopped at the stop sign before crossing the tracks. He looked to the south, saw no approaching train, and started to cross the tracks in the next-to-the-lowest of the truck's ten forward gears at a speed of from three to five miles per hour while he continued looking to the south. About the time the front of his truck was at the main line, he saw the Eugene freight approaching, and he pushed down on the throttle in an attempt to clear the tracks. The truck's maximum speed in its next-to-the-lowest gear was five miles per hour. The train was traveling at what defendant's driver said was a "terrible speed." The operator of the train said it was going 55 miles per hour. The speed limit for the train at that point was 65 miles per hour. The train did not blow its whistle until about the time it passed the caboose of the Canby Local. The engineer testified he could not see defendant's truck until his view cleared the caboose of the Canby Local and, at that time, the front of the truck was at the second track west of the stop sign. A deputy sheriff who investigated the accident testified a driver could not see down the main line past the caboose of the Canby Local until he was on the same line on which the Canby Local stood, which is the track next to the main line. The two tracks are only nine feet apart. It is apparent from the photographs that defendant's driver could see beyond the caboose before the front of his truck was at the main line. However, a farther view of the main line was obstructed by a curve in the track at a point not too far south of the caboose of

the Canby Local. The train collided with the rear of defendant's truck.

It is our view that under the circumstances related the jury could properly have found that the driver of defendant's truck was not negligent. At 55 miles per hour, the train would be traveling approximately 80 feet a second. At four miles per hour the truck would be traveling approximately six feet per second. From the time the front of defendant's truck was at the main line until it cleared the crossing, approximately twelve seconds would elapse, during which time the train would be traveling between 950 and 1,000 feet. The jury could have found that defendant's driver could not be reasonably expected to have known of the presence of the train until the front of his truck closely approached the main line and he was thereby trapped. The driver of defendant's truck was from out of state and was not shown to have had any familiarity with the crossing or with the relative use of the tracks except that which he could have ascertained from crossing the tracks from the opposite direction that morning.

The argument of plaintiff seems to proceed upon the theory that the crossing was found by the trial judge not to be extrahazardous, and, therefore, it *must* be inferred from the happening of the accident that defendant's driver was negligent. His reasoning seems to be that by definition an extrahazardous crossing is one which is so dangerous that a reasonably prudent motorist cannot safely use it unless measures are taken by the railroad which are in excess of those usually used by it to warn motorists[1]; since the cross-

---

[1] Brown v. Spokane, P. & S. Ry. Co., 248 Or 110, 117, 431 P2d 817 (1967).

ing was not extrahazardous, it could be safely crossed by a motorist by the exercise of due care; the railroad had the right of precedence at the intersection and was not negligent because it owed no duty of further care to defendant; the defendant's truck was struck by the train; and this could leave only the negligence of defendant's driver as the cause of the accident.

■ Whether the crossing was extrahazardous was irrelevant to the controversy between plaintiff and defendant. Extrahazardousness, if it exists, is a condition which determines whether the railroad has the further duty to take additional precautions over those usually used to protect motorists crossing its tracks. If a crossing is not extrahazardous, the railroad owes no duty to the motorist to slow the train, to put out flags, or to put up automatic gates or other protective devices not normally used at grade crossings. Therefore, the existence or nonexistence of such a condition is germane only to a controversy between the railroad and the motorist. The *present condition and hazards* of the intersection are relevant because the degree of care for others required of the defendant's driver in the operation of defendant's truck is proportional to the hazards of the intersection. However, whether the intersection was extrahazardous and whether the railroad thus had a further duty to protect motorists using the intersection are immaterial in a case to which the railroad was not a party.

■ Plaintiff next contends the trial court erred in not sustaining his objection to and in not striking evidence of an expert to the effect that other protective devices were available for use by the railroad to protect motorists at crossings. The matter arose as follows:

"MR. MOORE: Are there signals available

which would prohibit automobile traffic from going across an intersection even if a train can't be seen?

"MR. REITER: If it please your Honor, I object because it's irrelevant. There was a signal. The evidence in this case shows there was a signal.

"THE COURT: I will overrule the objection.

"THE WITNESS: Yes, there are.

"MR. MOORE: Q Tell the jury what type they are?

"A Protection devices that are used very normally is a cantilevered arms that are activated by an oncoming train which will fall down or come down across the roadway on either side of the tracks, which are also complemented by flashing red lights and a gong which rings.

"MR. REITER: Your Honor, I move that the last answer of the witness be stricken on the ground and for the reason that it affirmatively appears from the evidence that this crossing was not an extra hazardous crossing within the meaning of the law and that the State of Oregon stop sign and the cross buck were adequate warnings to the motorist as a matter of law and this is speculative and not for the jury.

"THE COURT: I will deny the motion."

There is no doubt that the admission of the evidence was error. It was error because it was not the duty of plaintiff to put up protective devices if they were required. It was the duty of the railroad, which was not a party to the case. The condition of the crossing at the time of the accident is the only relevant inquiry, as neither litigant had any responsibility for its condition.

■ The questions remain whether there was an adequate objection and whether the error was prejudicial. Plaintiff started out with a proper objection

when he objected on the grounds of relevancy. However, he did not stop there, but went on to explain in his objection and in his motion to strike that it was not relevant *because the railroad had already adequately protected the crossing* and had no duty to do anything further. The reason given for irrelevancy was obviously not the proper one. In addition, as plaintiff's objection and motion to strike the evidence indicate, the case was tried by both parties as if the question of the railroad's further duty to protect the motorists using the crossing were a relevant inquiry. In view of the misleading aspect of the reasons given for the objection and the manner in which the case was tried as a whole, we hold the error was not prejudicial.

The judgment of the trial court is affirmed.